### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

-------------------------------------------------------------

|  |  |
|---|---|
| JOHN DOE, | ) |
| Plaintiff | ) |
| | ) |
| v. | ) **Civil Action No.: 1:20-cv-12162** |
| | ) |
| BRANDEIS UNIVERSITY, | ) |
| Defendant | ) |

-------------------------------------------------------------

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
### FOR LEAVE TO FILE SUPPLEMENTAL AUTHORITY

Plaintiff John Doe ("**Plaintiff**") respectfully submits this opposition to Defendant Brandeis's Motion for Leave to File *Notice of Supplemental Authority* (hereinafter "Def. Mot." (ECF 61)), for the reasons as follows:

1. Defendant Brandeis submitted Doe v. Stonehill Coll. Inc., No. 21-1227, 2022 WL 17663611 (1st Cir. December 14, 2022) (hereinafter "**Stonehill**") as supplemental authority in support of its Motion for Summary Judgment (ECF 44) and in opposition to Plaintiff's Motion for Summary Judgment (ECF 47).

2. Stonehill was heard on appeal from the United States District Court for the District of Massachusetts and the First Circuit court affirmed in part and reversed in part the District Court's decision to grant Defendant Stonehill College, Inc.'s motion to dismiss pursuant to Rule 12(b)(6).

3. Similar to the instant case, Doe filed suit against Stonehill College, after he was expelled for violations of the college's sexual misconduct policy, to redress what he alleged was an unfair

and biased disciplinary process. 22 WL 17663611, at *1. Doe brought claims for breach of contract, sex discrimination in violation of Title IX, negligence and defamation. Id. The First Circuit reviewed Doe's complaint, Stonehill's policy, and investigation documents, produced as part of Stonehill's investigation into Doe's conduct, and reversed dismissal of the breach-of-contract claim. Id.

4. Also similar to the instant case, the underlying factual dispute included the transmission, by Roe and Doe, of instant messages after their sexual encounter, including e.g., Roe's message "that wasn't consensual" and Doe's apologetic messages "Please forgive me for being a drunken idiot," "I'm so really sorry I know I fucked up" and "I totally misread the situation." Id at n.37, *14; see also *14-15 (discussing the Snapchat messages); *16 (finding that the preponderance of the evidence standard calls for weighing of the competing evidence and that "inescapably, the investigators' failure in their report to explicitly[1] assess Doe's explanation for his Snapchat messages suggest a deficiency in the weighing of the competing evidence that plausibly may have affected both the finding of a violation, and as discussed below, the

---

[1] In the instant case, Defendant Brandeis similarly did not explicitly assess Doe's explanation for his messages, and rather in its investigative report credibility assessment stated "Doe admitted that his statements to the Investigator conflict with statements he made after the incident to Roe verbally and in writing in the January 2019 text messages to Roe" (ECF 48-23, at 12), included in its Summary of Relevant Undisputed Facts, that "[i]n January 2019, Doe and Roe text messaged each other about the incident. In the text messages Doe stated "Look I know what I did was super fucked up okay," "I know it was wrong," "I knew it was worse than a drunk hookup," and "I have not lied about it and owned up to it in full, to multiple people. I'm really sorry for what happened. I am" (ECF 48-23, at 12), and in its Factual Findings section included the transcribed messages (ECF 48-23, at 7-10).

As the Stonehill case discusses, Defendant Brandeis failed to weigh the competing evidence that affected the finding of a violation and Doe's suspension and Defendant Brandeis's treatment of Doe's messages reflects a failure to grapple with the complex credibility assessment presented by Doe and Roe's conflicting accounts of the incident. See Stonehill at *15.

decision of Stonehill's administrators to expel Doe"); compare Ex. 23 (Investigative Report) (ECF 48-23, at 7-10).

5. Also similar to the instant case, the underlying factual dispute involved a close call, as the First Circuit referred to the allegations in Stonehill as presenting a "classic case of [a] 'he said she said' scenario" "aside from the Snapchat messages and the belatedly reported exchange between Roe and Witness #2" ( Id at *16), which is comparable to Sonia Jurado, J.D., Director of the Office of Equal Opportunity and Title IX Coordinator at Defendant Brandeis, who oversaw and participated in the entire disciplinary process for the instant case, stating to Raymond Ou, Vice President of Student Affairs at Defendant Brandeis, during sanctioning of Plaintiff "I actually think this sanction[2] is appropriate. It is one interaction and there was no intercourse. Also - this was a case where a finding of no responsibility would have been appropriate too (very close)." See Ex. 42 (BRU0002113-2123), at 4 (Email String Regarding Sanctions) (ECF 48-42).

6. At Stonehill College, the sexual misconduct policy provides an investigative model, similar to Defendant Brandeis, whereby, a complaint of sexual misconduct is referred to Title IX investigators, who then investigate the complaint, including interviewing potential witnesses, and then prepare a report at the conclusion of their investigation to the primary decisionmaker. Stonehill at *3, 16.[3]

7. At Stonehill College, the investigators report is similar to Defendant Brandeis's and includes background information on the investigation, provisions from the sexual misconduct policy,

---

[2] The sanction imposed included suspension of Plaintiff for one academic year.
[3] The principal difference in applicable policies is that at Stonehill College investigators also include a recommendation for responsibility in the investigative report, part 2, prior to it being transmitted to the decisionmaker. See e.g., Stonehill at *16.

and a "Findings of Fact" section consisting of summaries of witness interviews. Id at *3; compare Ex. 23 (Investigative Report) (ECF 48-23, at 2-10) (including basic procedural summary, scope of investigation, relevant policy sections, and factual findings sections).

8.  Additionally, the Stonehill College investigators report included Part 2, which also contained, similar to Defendant Brandeis's investigative report, a list of disputed and undisputed facts and a section labeled credibility assessment. Stonehill Coll. Inc., at *4; compare Ex. 23 (Investigative Report) (ECF 48-23, at 10-12).

9.  Defendant Brandeis argues that all of the contract principles for which Brandeis cited in the District Court's decision remain good law. (ECF 61-1 at 2).

10. Defendant Brandeis argues that it cited the District Court's decision for the point that (1) an alleged procedural violation fails to support a breach of contract claim absent showing that the alleged process error actually harmed the student; (2) that "basic fairness"" in the content of student disciplinary proceedings means only "some minimum level of fair play" and the First Circuit took no issue with that formulation; and (3) that the First Circuit decision overturning, in part, the District Court's decision supports Brandeis's position on waiver – that a respondent cannot rely on points of alleged procedural error that he never fairly raised during the investigation or appeal when the university could have addressed them. Def. Mot. (ECF 61-1 at 3-4).

11. First, pertaining to actual harm to the student, Defendant Brandeis asserts "[t]he First Circuit affirmed the principle that a student claiming breach of contract for a deviation from established procedures must plausibly allege the procedural violation 'harmed his defense and affected the outcome'" *18 and n.41." See Def. Mot. (ECF 61-1, at 3).

12. The First Circuit did not espouse any such specific principle, rather, at the motion to dismiss
phase, the First Circuit concluded, as follows:

> Doe had plausibly alleged that Stonehill breached his reasonable expectations by
> denying him the opportunity to review all relevant facts before the final report was sent
> to the AVPSA, failing to provide advance notice of Roe's second interview, failing to
> perform a fair and thorough investigation in the ways particularized herein, and failing
> to ensure that the ultimate decisionmakers independently reviewed the facts to assess
> whether he 'more likely than not' engaged in nonconsensual intercourse with Roe. In
> so concluding, we emphasize that a court evaluating a motion to dismiss must take an
> indulgent view of the alleged facts. [...] Hence, to defeat dismissal of his contract
> claim, Doe must only plead facts giving rise to a plausible inference that his reasonable
> expectations were not met because Stonehill strayed from the promises made in its
> sexual misconduct policy in ways that <u>harmed his defense and affected the outcome</u>.

Stonehill Coll. Inc, at *18.

13. The First Circuit further found that "[it] ha[d] concluded Doe met this requirement <u>with the
flaws [it had] identified.</u> Moreover, even if one or more of those irregularities might be viewed
in isolation as a 'minor deviation [ ] from designated procedures' without impact on the
outcome of the Title IX investigation, <u>Doe has plausibly alleged that, at least cumulatively,
they had such an effect."</u> Id.

14. The First Circuit provided a footnote suggesting that Stonehill College's "minor deviation"
policy language could provide an apt formulation for assessing the viability of Doe's breach-
of-contract under Massachusetts law but specifically analyzed the procedural irregularities
<u>cumulatively</u> as to the effect. Id at n.41, *18.

15. Second, pertaining to the basic fairness formulation, Defendant Brandeis asserts "'basic
fairness' in the context of student disciplinary proceedings means only 'some minimum level
of fair play' including notice of the charges, a meaningful opportunity to defend oneself, and
a decision that is not arbitrary or capricious or made in bad faith" and the "First Circuit took
no issue with that formulation, which is not surprising because it was based upon prior

decisions of this Court and the Massachusetts Supreme Judicial Court." Def. Mot. (ECF 61-1, at 3).

16. In fact, the First Circuit discussed basic fairness and their recent observations that "while denial of basic fairness is a recognized theory of recovery [in Massachusetts], the precise contours of such a claim have yet to be clearly defined" (2022 WL 17663611, at *19 (citing Sonoiki v. Harvard Univ., 37 F.4th 691, 714 (1st Cir. 2022)) and that they had "few relevant cases to draw from." Id at *19.

17. Within the context of the "few relevant cases to draw from" they explained the focus of each, i.e., procedural protections for the student (Doe v. Trs. of Bos. Coll., 942 F.3d 527 (1st Cir. 2019), whether certain aspects of the disciplinary process rendered the proceedings "unfair" (Cloud v. Trs. of Bos. Coll., 720 F.2d 721 (1st Cir. 1983), etc.

18. Then, the First Circuit found, that

[it] need not define the precise contours of the basic fairness analysis here for a simple reason: Stonehill made a "commitment" in its sexual misconduct policy to "[e]ngag[e] in an impartial, prompt, fair, equitable investigative process to resolve reports of sexual gender-based misconduct," (emphasis added), and we have concluded that Doe has adequately alleged procedural irregularities that may have resulted in prejudice to his defense and, hence, affected the outcome of the misconduct inquiry. Whatever else the requirement of "basic fairness" means, we cannot reconcile plausible allegations of prejudicial investigative flaws with Stonehill's commitment to provide a "fair" process. Stonehill at *19 (emphasis in original).

19. Defendant Brandeis likewise made commitments in its sexual misconduct policy, including:

   a. that through the **"Resolution Process,** [it] strives to provide a resolution process **that is prompt, equitable, fair, thorough, and impartial towards all parties and witnesses involved"** (Ex. 2 (BRU0002545) (Sexual Misconduct Policy) (ECF 48-2, at 13))

   b. **that in all cases, the investigator will conduct a prompt, equitable, fair, thorough and impartial investigation** into the allegations raised…" (ECF 48-2, at 17), and

   c. that **students involved** in the Resolution Process **have the right to "participate in a Resolution Process that is fair, impartial,** and provides adequate notice and a meaningful opportunity to be heard" (ECF 48-2, at 23).

20. The First Circuit certainly made no specific formulation of "basic fairness" and "some minimum level of fair play" does not even appear in its decision.

21. Third, pertaining to waiver, Defendant Brandeis asserts "the First Circuit's decision in Stonehill supports Brandeis's position on waiver – that a respondent cannot rely on points of alleged procedural error that he never fairly raised during the investigation or appeal, when the university could have addressed them. 2022 WL 17663611, at 14, n. 32." Def Mot. (ECF 61-1, at 4).

22. As previously argued in Plaintiff's Opposition to Defendant's Motion for Summary Judgment (ECF 52), Defendant Brandeis's waiver arguments rely upon cases from other jurisdictions[4] and principles of Massachusetts employment law, including contractual rights arising out of personnel manuals in a corporate setting and the exhaustion of grievance procedures. See Pl. Opp. to Def. Mot. for Summary Judgment (ECF 52, at 5-6). Plaintiff was unable to locate a single Massachusetts state case or District of Massachusetts federal case applying these principles to claims by students for breach of contract based on disciplinary proceedings and Defendant Brandeis provided none. Id.

---

[4] Defendant Brandeis cited: Virginia (Tigrett v. Rector & Visitors of Univ. of Va., 97 F. Supp. 2d 752, 762 (W.D. Va. 2000); and Tennessee (Z.J. v. Vanderbilt Univ., 355 F. Supp. 3d 646, 694 (M.D. Tenn. 2018). (ECF 45, at 11).

23. Now, Defendant Brandies makes the incredulous assertion that the First Circuit decision in Stonehill supports its argument that this court should apply employment law grievance procedure waiver principles to its student handbook based on a single footnote by the First Circuit.

24. The First Circuit stated in Footnote 32 that because Doe had not consistently chosen to rely on a specific response by Roe ("it's not you") in former settings, including in his District Court complaint and appellate brief (and in Stonehill proceedings) they would not consider it (id at n.32) which comports with the application of the well-established raise-or-waive rule of appellate procedure.

25. The First Circuit's Stonehill decision does not adopt for the First Circuit or for this Commonwealth of Massachusetts any such waiver requirement that Defendant Brandeis claims this court must utilize in its analysis of the pending Motions for Summary Judgment.

26. In Plaintiff's view, Stonehill is instructive to this court on the importance of a college or university meeting the reasonable expectations standard for each stage of the disciplinary process, including witness interviews and fair and thorough investigations, the importance of investigators' credibility assessments during disciplinary proceedings and how investigators choose to treat information obtained, such as apologetic messages which an investigator could incorrectly view as a substitute for the searching analysis of consent, and the importance of decisionmakers making independent determinations that the sexual misconduct findings are actually supported by the preponderance of the evidence (rather than facial deference) and independent judgments on whether facts gleaned in an investigation do indeed align with the findings offered by the investigators during an appeal process.

Respectfully submitted,

JOHN DOE,
By his attorney,

Dated: 1/10/2023

/s/ George J. Leontire
George J. Leontire (BBO # 294270)
LEONTIRE & ASSOCIATES, P.C.
PO Box 4328
Westport, MA 02790
(855) 223-9080
george@leontirelaw.com

I certify that on January 10, 2023 this document was filed electronically through the ECF system and thereby delivered by electronic means to all counsel of record.

_____ /s/ George J. Leontire _____.